# United States Court of Appeals

*for the*

# Eleventh Circuit

———————

THOMAS CROWTHER,

*Plaintiff-Appellee,*

– v. –

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA,

*Defendant-Appellant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
(HONORABLE VICTORIA M. CALVERT, U.S. DISTRICT JUDGE)

## BRIEF FOR PLAINTIFF-APPELLEE

ANDREW T. MILTENBERG
KRISTEN MOHR
NESENOFF & MILTENBERG, LLP
363 Seventh Avenue, 5th Floor
New York, New York 10001
(212) 736-4500

– and –

ANDREW YANCEY COFFMAN
PARKS, CHESIN & WALBERT, PC
1355 Peachtree Street NE, Suite 2000
Atlanta, Georgia 30309
(404) 873-8048

*Attorneys for Plaintiff-Appellee*

CP COUNSEL PRESS    (800) 4-APPEAL • (326230)

Thomas Crowther v. Board of Regents of the University System of Georgia
No. 23-12475

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to 11th Cir. R. 26.1-1(a), the following is a complete, alphabetical list of all persons and entities known to have an interest in the outcome of this appeal:

Bergethon, Ross W., Principal Deputy Solicitor General, Counsel

    for Defendant-Appellant

Bernstein, Stuart, Counsel for Plaintiff-Appellee

Board of Regents of the University System of Georgia, Defendant-Appellant

Calvert, Honorable Victoria Marie, United States District Judge,

    Northern District of Georgia

Carr, Christopher M., Attorney General, State of Georgia

Coffman, Andrew Y., Counsel for Plaintiff-Appellee

Crowther, Thomas, Plaintiff-Appellee

Golart, Justin T., Deputy Solicitor General, Counsel for Defendant-Appellant

Hutton, Benjamin, Defendant (dismissed)

Keel, Brooks, Defendant (dismissed)

Miltenberg, Andrew T., Counsel for Plaintiff-Appellee

Mohr, Kristen, Counsel for Plaintiff-Appellee

Nesenoff & Miltenberg, LLP, Counsel for Plaintiff-Appellee

Parks, Chesin & Walbert, PC, Counsel for Plaintiff-Appellee

Petrany, Stephen J., Solicitor General, Counsel for Defendant-Appellant

C-1

Thomas Crowther v. Board of Regents of the University System of Georgia
No. 23-12475

Reed, Michele, Defendant (dismissed)

Smith, Devin Hartness, Special Assistant Attorney General,

      Counsel for Defendant-Appellant

Stoff, Katherine P., Senior Assistant Attorney General, State of

      Georgia

Thorp, Scott, Defendant (dismissed)

Webb, Bryan K., Deputy Attorney General, State of Georgia

No publicly traded company or corporation has an interest in the outcome of this

appeal.

<u>/s/ Kristen Mohr</u>

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee Thomas Crowther respectfully requests oral argument. This issue is a matter of first impression for this Circuit, and the issue presented for review involves a split amongst circuits. Oral argument may assist this Court in resolving the issue.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF JURISDICTION...............................................................vi

ISSUES PRESENTED FOR REVIEW ...............................................................1

STATEMENT OF THE CASE...............................................................1

    I.    Relevant Procedural History ...............................................................1

    II.    Statement of Relevant Facts ...............................................................2

STANDARD OF REVIEW ...............................................................4

SUMMARY OF ARGUMENT ...............................................................4

ARGUMENT ...............................................................6

    I.    OVERLAPPING TITLE VII COVERAGE DOES NOT
PREEMPT A TITLE IX CLAIM...............................................................6

    II.    TITLE IX PROVIDES A PRIVATE RIGHT OF ACTION
FOR EMPLOYMENT DISCRIMINATION CLAIMS......................12

CONCLUSION ...............................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*AB v. Rhinebeck Cent. Sch. Dist.*,
　224 F.R.D. 144 (S.D.N.Y. 2004) .................................................................. 10-11

*Alexander v. Gardner-Denver Co.*,
　415 U.S. 36 (1974) ................................................................................................19

*Bedard v. Roger Williams Univ.*,
　989 F. Supp. 94 (D.R.I. 1997) ...........................................................................11

*Brown v. General Services Administration*,
　425 U.S. 820 (1976) ...................................................................................... 15, 19

*Cannon v. Univ. of Chicago*,
　441 U.S. 677, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979) ........................... 7, 14, 16

*Castro v. Yale Univ.*,
　518 F. Supp. 3d 593 (D. Conn. 2021) ................................................... 7, 8, 9, 18

*Doe v. Mercy Cath. Med. Ctr.*,
　850 F.3d 545 (3d Cir. 2017) ........................................... 10, 12, 15, 16, 17, 18, 20

*Fox v. Pittsburgh State Univ.*,
　257 F. Supp. 3d 1112 (D. Kan. 2017) ........................................................... 14, 18

*Gebser v. Lago Vista Indep. Sch. Dist.*,
　524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998) ...................................7

*Glover v. Liggett Grp., Inc.*,
　459 F.3d 1304 (11th Cir. 2006) .............................................................................4

*Hauff v. State Univ. of N.Y.*,
　425 F. Supp. 3d 116 (E.D.N.Y. 2019) ......................................................... 14, 15, 18

*Henschke v. N.Y. Hosp.-Cornell Med. Ctr.*,
　821 F. Supp. 166 (S.D.N.Y. 1993) .....................................................................11

*Hiatt v. Colorado Seminary*,
　858 F.3d 1307 (10th Cir. 2017) ..........................................................................12

*Hunt v. Washoe Cnty. Sch. Dist.*,
　No. 3:18-cv-00501-LRH-WGC, 2019 WL 4262510
　(D. Nev. Sept. 9, 2019) ................................................................................. 14, 18

*Ivan v. Kent State Univ.*,
No. 94 Civ. 4090, 1996 WL 422496 (6th Cir. July 26, 1996) .............................12

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*,
534 U.S. 124 (2001) ...............................................................................................6

*Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167 (2005)................................................................. 8, 9, 14, 15, 16, 17

*Johnson v. Railway Express Agency, Inc.*,
421 U.S. 454 (1975) .......................................................................... 15, 19

*Kelley v. Iowa State Univ. of Sci. and Tech.*,
311 F. Supp. 3d 1051 (S.D. Iowa 2018)................................................................14

*Kohlhausen v. Suny Rockland Cmty. College*,
2011 U.S. Dist. LEXIS 42055 (S.D.N.Y. Feb. 9, 2011) ......................................10

*Lakoski v. James*,
66 F.3d 751 (5th Cir. 1995) .................................................... 9, 12, 14, 15

*Lipsett v. Univ. of Puerto Rico*,
864 F.2d 881 (1st Cir. 1988) ................................................. 10, 12, 13

*Murray v. New York Univ. College of Dentistry*,
57 F.3d 243 (2d Cir. 1995) ....................................................................10

*Nelson v. Univ. of Maine Sys.*,
923 F. Supp. 275 (D. Me. 1996) ..........................................................11

*North Haven Bd. of Educ. v. Bell*,
456 U.S. 512 (1982)................................................... 5, 8, 9, 10, 16, 17

*Nurradin v. Tuskegee Univ.*,
No. 3:21-CV-00155-SRW, 2022 WL 808693
(M.D. Ala. Mar. 16, 2022) ...................................................................18

*O'Connor v. Davis*,
126 F.3d 112 (2d Cir. 1997) ...................................................................7

*Orr v. S. Dakota Bd. of Regents*,
No. 1:19-CV-01023-CBK, 2023 WL 3484207 (D.S.D. May 16, 2023),
*appeal dismissed sub nom. Orr v. Schnoor*, No. 23-2321,
2023 WL 8252409 (8th Cir. July 25, 2023).................................... 18-19

*POM Wonderful LLC v. Coca-Cola Co.*,
134 S. Ct. 2228 (2014)............................................................................6

*Preston v. Va. ex rel. New River Cmty. Coll*.,
  31 F.3d 203 (4th Cir. 1994) ............................................................................ 10, 12

*Russell v. Nebo Sch. Dist*.,
  No. 2:16-cv-00273-DS, 2016 WL 4287542 (D. Utah Aug. 15, 2016) .................14

*United Steelworkers of Am., AFL-CIO-CLC v. Weber*,
  443 U.S. 193, 99 S. Ct. 2721, 61 L. Ed. 2d 480 (1979)........................................8

*Vengalattore v. Cornell Univ*.,
  36 F.4th 87 (2d Cir. 2022)...................................................................................18

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
  515 U.S. 528 (1995)..........................................................................................5, 6

*Waid v. Merrill Area Public Schools*,
  91 F.3d 857 (7th Cir. 1996) ................................................................... 12, 14, 15

*Weinstock v. Columbia Univ*.,
  224 F.3d 33 (2d Cir. 2000) ..................................................................................10

*Winter v. Pa. State Univ*.,
  172 F. Supp. 3d 756 (M.D. Pa. 2016) ..................................................................14

## Statutes & Other Authorities:

20 U.S.C. § 1681(a) ....................................................................................................7

28 U.S.C. § 1292(b) ...................................................................................................2

42 U.S.C. § 1981 .......................................................................................................15

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1, 4

U.S. Dep't of Justice, Title IX Legal Manual IV.B.2., available at
  http://www.justice.gov/crt/about /cor/coord/ixlegal.php...........................5, 11

## STATEMENT OF JURISDICTION

Plaintiff-Appellee Thomas Crowther ("Appellee" or "Crowther") brings this action seeking legal and equitable relief against Defendant-Appellant Board of Regents of the University System of Georgia ("Appellant" or the "Board"), alleging that the Board violated Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, by wrongfully terminating his position as a professor at Augusta University as a result of a gender-biased university investigation arising from false Title IX complaints. The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Crowther's claims arise under the laws of the United States.

This Court of Appeals has appellate jurisdiction pursuant to 28 U.S.C. § 1292(b). On March 15, 2023, the District Court granted in part and denied in part the defendants' motion to dismiss. Dkt 44. On April 27, 2023, the District Court certified the following question for interlocutory appeal: "Whether Title VII precludes claims for sex discrimination in employment brought under Title IX?" Dkt 49. On August 1, 2023, the District Court granted Appellant's petition for an appeal of the District Court's March 15, 2023 Order.

## ISSUES PRESENTED FOR REVIEW

Whether Title VII precludes claims for sex discrimination in employment brought under Title IX?

## STATEMENT OF THE CASE

### I.    Relevant Procedural History

Thomas Crowther filed his Complaint on September 28, 2021. Dkt 1. On November 12, 2021, defendants filed a motion to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt 32. On December 20, 2021, Plaintiff filed a brief in opposition to defendants' motion to dismiss. Dkt 36. On January 24, 2022, defendants filed their reply brief in further support of the motion to dismiss. Dkt 41.

On March 15, 2023, the District Court issued a decision and order denying in part and granting in part defendants' motion to dismiss. Dkt 44. In its Order, the Court held that Plaintiff's Title IX claims were not preempted by Title VII, and allowed Plaintiff's claims for Title IX erroneous outcome and Title IX retaliation against the Board to proceed. On April 19, 2023, the District Court *sua sponte* noted that it was considering certifying its March 15, 2023 Order for interlocutory appeal in light of the pending appeal in *Joseph v. Board of Regents*, No. 23-11037 (11th Cir. Mar. 31, 2023), in which one of the questions presented was "Whether Title VII preempts claims for sex discrimination in employment brought under Title IX?"

1

On April 27, 2023, the District Court certified its March 15, 2023 Order for interlocutory appeal. Dkt 49. On August 1, 2023, the District Court granted the Board's petition to appeal under 28 U.S.C. § 1292(b). Dkt 52.

## II.   <u>Statement of Relevant Facts</u>

The facts are set forth in full in Plaintiff's Complaint (Dkt. 1), incorporated herein by reference. A summary of the relevant facts follows:

Thomas Crowther has taught art courses at Augusta University since 2006, and was promoted to Senior Lecturer in February 2020. Dkt. 1. at ¶¶ 86-88. In February 2020, a number of undergraduate students conspired to have Plaintiff removed from his position at the University, prodding students and alumni for false information to use for their complaints via social media messages and in-person questioning. Dkt. 1 at ¶¶ 105-108.

These students brought sexual harassment complaints forward to the Augusta Police Department, and the complaints were forwarded to Defendants Thorp and Reed. Dkt. 1 at ¶¶ 96-98. The students falsely alleged that Plaintiff improperly took photographs of a nude model in his class and touched female students in class. Dkt. 1 at ¶ 100. The University commenced an investigation, in which it refused to disclose the complainants' identities and allegations to Plaintiff and kept Plaintiff in the dark throughout the entire investigation. Dkt. 1 at ¶ 127.

While the investigation was underway, and before a finding had been rendered in Plaintiff's case, Defendant Thorp issued Plaintiff the first negative teaching evaluation of Plaintiff's career, clearly punishing Plaintiff for the Title IX allegations before any decision had been reached in his case. Dkt. 1 at ¶¶ 136-138. Thorp then met with Plaintiff to initiate the process to terminate Plaintiff with cause, citing policies and memoranda that had never before been used at the University. Thorp told Plaintiff that he had to resign or else he would be terminated. Dkt. 1 at ¶ 146. The University, however, recommended "further inquiry" into the matter, leaving Plaintiff under immense scrutiny. Dkt. 1 at ¶ 153.

During the investigation, Plaintiff submitted the names of a number of witnesses to be interviewed by the University, including the very student that Plaintiff was helping on the day that the alleged nonconsensual photograph of the nude model was taken, as well as a number of former models that modeled for Plaintiff's classes. Dkt. 1 at ¶¶ 156-162. In total, Plaintiff submitted twenty-two written statements from witnesses, and the Investigators declined to interview a single one. Dkt. 1 at ¶ 162.

As a result of the University's one-sided investigation, Plaintiff was found responsible for violation of the Sexual Harassment Policy and sanctioned with a one-semester suspension. Dkt. 1 at ¶ 191. The finding was made without a hearing, as Plaintiff had been promised at the beginning of the investigation, and without an

explanation. Dkt. 1 at ¶ 191. On information and belief, from the time of Plaintiff's suspension, the majority of Plaintiff's scheduled classes were reassigned to female instructors or instructors that were involved in the Title IX process. Dkt. 1 at ¶ 192.

Plaintiff subsequently appealed his decision to numerous faculty members at Augusta, all of whom upheld the original findings, despite Plaintiff having noted a plethora of procedural deficiencies in his appeal. Dkt. 1 at ¶ 193-198. Before the final decision was rendered on Plaintiff's appeal, Plaintiff received a letter from the Interim Dean, further sanctioning him to reassignment of his duties to remedial tasks upon his return, and a nonrenewal of his contract following the Spring 2021 semester. Dkt. 1 at ¶ 202-203. Legal Affairs issued the final rejection of Plaintiff's appeal on April 13, 2021, over one year after the initial complaint. Dkt. 1 at ¶ 218.

## STANDARD OF REVIEW

This Court reviews de novo the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff." Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).

## SUMMARY OF ARGUMENT

Claims for employment discrimination under Title IX are not preempted by Title VII. When two federal statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard

each as effective. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995).

Here, Title VII and Title IX are not only capable of co-existence, but statutory and Supreme Court precedent encourage co-existence. The mere fact that there may be concurrent availability of remedies for an employee under both Title VII and Title IX does not bar the employee's ability from bring an employment discrimination claim under the separate and distinct Title IX statute. Indeed, as the Supreme Court has stated, "Congress has provided a variety of remedies, at times overlapping, to eradicate employment discrimination." *North Haven*, 456 U.S. at 535, 102 S.Ct. 1912. Indeed, even the Department of Justice recognizes available employment discrimination claims under Title IX and has released a statement noting: "The Department takes the position that Title IX and Title VII are separate enforcement mechanisms. Individuals can use both statutes to attack the same violations. This view is consistent with the Supreme Court's decisions on Title IX's coverage of employment discrimination, as well as the different constitutional bases for Title IX and Title VII." *See* U.S. Dep't of Justice, Title IX Legal Manual IV.B.2.

As demonstrated below, the Supreme Court cases which have considered the applicability of employment claims under Title IX strongly support the contention that claims brought under Title IX are not barred by Title VII. The majority of Circuits that have considered the issue have held that Title IX is not preempted by

5

Title VII. This Court should join the First, Third, Fourth, Sixth, and Tenth Circuits, and allow Crowther's Title IX claims to proceed.

## ARGUMENT

### I.    OVERLAPPING TITLE VII COVERAGE DOES NOT PREEMPT A TITLE IX CLAIM

The District Court properly held that Plaintiff's Title IX claim for employment discrimination is not preempted by Title VII.

First, Appellant's argument that "the absence of preclusion language in Title VII is unimportant" is simply disingenuous. When two federal statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995). When two statutes complement each other, i.e., each has its own scope and purpose and imposes different requirements and protections, finding that one precludes the other would flout the Congressional design. *See POM Wonderful LLC v. Coca-Cola Co.,* 134 S.Ct. 2228, 2238 (2014). Courts harmonize overlapping statutes so long as each reaches some distinct cases. *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 144 (2001). Here, Title IX and Title VII each have their own scope and purpose, each reach distinct cases, and there is no specific clearly expressed congressional intent to the contrary.

Title IX specifically provides that "[n]o person in the United states shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. 1681(a). At its heart, "Title IX's private right of action is an enforcement tool used to hold educational institutions accountable for their actions." *Castro v. Yale Univ*., 518 F. Supp. 3d 593, 606 (D. Conn. 2021); *see Cannon v. Univ. of Chicago,* 441 U.S. 677, 707, 99 S. Ct. 1946, 1963, 60 L. Ed. 2d 560 (1979) ("the individual remedy will provide effective assistance to achieving the statutory purposes."). "The educational nature of the employer, *not the position of the litigant*, determines its applicability." 518 F. Supp. 3d at 606 (emphasis added); *see also O'Connor v. Davis,* 126 F.3d 112, 116 (2d Cir. 1997). "While Title IX's private right of action is argued to be duplicative of Title VII, the enforcement mechanisms of each statute apply to different categories of employers and serve independent ends: Title VII provides redress to individual employees for the discriminatory actions of their employers, while Title IX encompasses both individual redress and systemwide compliance by recipients of federal funds." 518 F. Supp. 3d at 606. *See also Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274, 287, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) ("[W]hereas Title VII aims centrally to compensate victims of discrimination, Title IX focuses more on 'protecting' individuals from discriminatory practices carried out by recipients of federal

funds."); *Jackson*, 544 U.S. at 175, 180, 125 S.Ct. 1497 ("Title VII is a vastly different statute from Title IX" in part because "Congress enacted Title IX not only to prevent the use of federal dollars to support discriminatory practices, but also to provide individual citizens effective protection against those practices.") (internal quotations omitted). "Even if the enforcement mechanisms may function similarly for litigants, the prospective impacts of each statute on the country's employment and educational sectors are distinct, and neither statute's power should be limited by restricting the legal devices used to realize those goals." 518 F. Supp. 3d 593, 606–07. Indeed, the Supreme Court has stated that "Congress has provided a variety of remedies, at times overlapping, to eradicate employment discrimination." *North Haven*, 456 U.S. at 535, 102 S.Ct. 1912. It is up to Congress, not the courts, to make a corrective change. *Id.*

"The Supreme Court has consistently held that Congress intended Title IX to be interpreted broadly and limiting its scope would be at odds with that directive." 518 F. Supp. 3d at 607 (citing *Jackson*, 544 U.S. at 175, 125 S.Ct. 1497; *North Haven*, 456 U.S. at 521, 102 S.Ct. 1912). "Moreover, because the two Titles derive from two distinct sources of Congressional authority—Title VII was 'enacted pursuant to the commerce power to regulate purely private decisionmaking,' *United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 207 n.6, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), and Title IX was passed under the Spending Power,

conditioning the use of federal funds on 'contractual' terms, *Jackson*, 544 U.S. at 181, 125 S.Ct. 1497—they are not inherently incompatible." 518 F. Supp. 3d at 607.

Moreover, any argument that Title VII's existence limits the availability of Title IX for employment-claims at educational programs ignores Supreme Court precedent which has established that Title IX extends to employment issues at educational programs. In *North Haven Bd. of Educ.*, the Supreme Court upheld regulations promulgated by the Department of Education pursuant to Title IX that prohibited gender-based employment discrimination for federally-funded education programs. *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982). In dicta, the Supreme Court noted that "a female employee who works in a federally funded education program is 'subjected to discrimination under' that program if she is paid a lower salary for like work, given less opportunity for promotion, or forced to work under more adverse conditions than are her male colleagues." *Id.*[1]

As explained by the Third Circuit:

[A] private retaliation claim exists for employees of federally-funded education programs under Title IX notwithstanding Title VII's concurrent applicability.... When a funding recipient retaliates against a

---

[1] The Supreme Court has also held that an employee of an educational program who complains about a Title IX violation may bring a private retaliation action under Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184, 125 S.Ct. 1497, 1510 (2005). Thus, if the Court were to find that Defendant is covered by Title IX, but that Plaintiff cannot bring a gender discrimination claim because of *Lakoski* (discussed below), under Jackson, Plaintiff could still bring Count II of the Complaint, which alleges that she was retaliated against due to his participation in the university's investigation.

"person," including an employee, because she complains of sex discrimination, that's "intentional discrimination" based on sex, violative of Title IX and actionable under Cannon's implied cause of action. Whether that person could also proceed under Title VII is of no moment, for Congress provided a "variety of remedies, at times overlapping, to eradicate" private-sector employment discrimination.

*Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 563 (3d Cir. 2017).

Several courts have accordingly held that because of the private right of action the Supreme Court found to exist for students coupled with the Supreme Court's decision in *North Haven* that Title IX extended to employment discrimination in educational programs, means that employees of federally-funded education programs suing for gender discrimination have a private right of action under Title IX. See, e.g., *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) (identical standards apply to employment discrimination claims under Title VII and Title IX); *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 248 (2d Cir. 1995) (Title IX construed to prohibit gender discrimination against both students and employees); *Preston v. Va. ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206 (4th Cir. 1994) (implied private right of action extends to employment discrimination on the basis of gender by educational institutions receiving federal fund); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 897 (1st Cir. 1988); *Kohlhausen v. Suny Rockland Cmty. College*, 2011 U.S. Dist. LEXIS 42055, *32 (S.D.N.Y. Feb. 9, 2011) ("this Court is nonetheless unpersuaded by the Defendants' argument that Title VII provides the sole cause of action for employees of federally funded educational programs"); *AB*

*v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. 144, 153 (S.D.N.Y. 2004) ("Title IX was intended by Congress to function as an additional safeguard against gender-based discrimination in the context of federally funded education programs; notwithstanding the possibility of other available remedies, including without limitation those available under Title VII."); *Bedard v. Roger Williams Univ.*, 989 F. Supp. 94, 97 (D.R.I. 1997); *Nelson v. Univ. of Maine Sys.*, 923 F. Supp. 275, 278-79 (D. Me. 1996); *Henschke v. N.Y. Hosp.-Cornell Med. Ctr.*, 821 F. Supp. 166, 172 (S.D.N.Y. 1993) ("a private right of action for employment discrimination exists under Title IX separate and apart from Title VII and without regard to the availability of the Title VII remedy.").

The U.S. Department of Justice also recognizes such a Title IX employment discrimination cause of action. *See* U.S. Dep't of Justice, Title IX Legal Manual IV.B.2., available at http://www.justice.gov/crt/about /cor/coord/ixlegal.php ("The Department takes the position that Title IX and Title VII are separate enforcement mechanisms. Individuals can use both statutes to attack the same violations. This view is consistent with the Supreme Court's decisions on Title IX's coverage of employment discrimination, as well as the different constitutional bases for Title IX and Title VII.").

## II.    TITLE IX PROVIDES A PRIVATE RIGHT OF ACTION FOR EMPLOYMENT DISCRIMINATION CLAIMS

While the Supreme Court has yet to weigh in on this issue, the majority of Circuit Courts (i.e., the First, Third, Fourth, Sixth, and Tenth Circuits) that have weighed in have held that Title IX is not preempted by Title VII. *See Doe v. Mercy Catholic Medical Center*, 850 F.3d 545, 560 (3d Cir. 2017) ("Title VII's concurrent applicability does not bar Doe's private causes of action for retaliation and quid pro quo harassment under Title IX"); Lipsett v. University of Puerto Rico, 864 F.2d 881, 896 (1st Cir. 1988) (finding employment discrimination against a student-employee actionable under Title IX); Preston v. Com. of Va. Ex Rel. New River Com. Coll., 31 F. 3d 203, 206 (4th Cir. 1994) (holding that Title IX private cause of action "extends to employment discrimination on the basis of gender by educational institutions receiving federal funds."); Hiatt v. Colorado Seminary, 858 F.3d 1307, 1315 (10th Cir. 2017); Ivan v. Kent State Univ., No. 94 Civ. 4090, 1996 WL 422496, at *2 n.10 (6th Cir. July 26,1996) (unpublished opinion overruling district court's conclusion that "Title VII preempts an individual's private remedy under Title IX").[2]

Defendant's argument that Title VII and Title IX cannot apply concurrently is inapposite, as many courts have held otherwise. In fact, the First Circuit in *Lipsett v.*

---

[2] Only the Fifth and Seventh Circuits have held to the contrary. *See Lakoski v. James*, 66 F.3d 751, 755 (5th Cir. 1995); *Waid v. Merrill Area Public Schools*, 91 F.3d 857 (7th Cir. 1996).

*Univ. of Puerto Rico* conspicuously upheld an employment discrimination claim under Title IX, even when Title VII could have applied concurrently. 864 F.2d 881, 897 (1st Cir. 1988). In *Lipsett*, the First Circuit reversed a grant of summary judgment to a defendant university, finding that "[b]ecause plaintiff has presented facts from which it could be found . . . that University officials discharged plaintiff because of her sex, plaintiff has established that the University could be found liable under Title IX." Id. at 914–15. Clarifying the standards applicable to Title IX employment discrimination claims, the court declared that its holding "is limited to the context of employment discrimination"—the precise area where Title VII and Title IX overlap. Id. at 897. *Lipsett* thus plainly permitted Title IX lawsuits by employees who were discharged by universities, even when Title VII was concurrently applicable. Hence, numerous courts have observed that the First Circuit's approach tracks that of the Third, Fourth, and Sixth Circuits, and not the Fifth and Seventh Circuits.

Even if this Court deems *Lipsett* not to be dispositive in this matter, it should nonetheless follow the majority of circuits to have considered the issue and conclude that Title VII does not preempt Title IX employment discrimination claims. As Defendant notes, only two courts of appeals—the Fifth and the Seventh Circuits— have found to the contrary. The majority of circuits and most district courts to consider the issue have held that Title VII does not preempt Title IX employment

13

discrimination claims. *See e.g., Hauff v. State Univ. of N.Y.*, 425 F. Supp. 3d 116, 133 (E.D.N.Y. 2019); *Hunt v. Washoe Cnty. Sch. Dist.*, No. 3:18-cv-00501-LRH-WGC, 2019 WL 4262510, at *7 (D. Nev. Sept. 9, 2019); *Kelley v. Iowa State Univ. of Sci. and Tech.*, 311 F. Supp. 3d 1051, 1065 (S.D. Iowa 2018); *Fox v. Pittsburgh State Univ.*, 257 F. Supp. 3d 1112, 1122 (D. Kan. 2017); *Winter v. Pa. State Univ.*, 172 F. Supp. 3d 756, 774–75 (M.D. Pa. 2016); *Russell v. Nebo Sch. Dist.*, No. 2:16-cv-00273-DS, 2016 WL 4287542, at *3 (D. Utah Aug. 15, 2016).

Defendant relies in particular on two circuit-court decisions from the 1990s: the Fifth Circuit's decision in *Lakoski v. James*, 66 F.3d 751 (5th Cir. 1995), and the Seventh Circuit's decision in *Waid v. Merill Area Pub. Schs.*, 91 F.3d 857 (7th Cir. 1996). These cases are particularly unpersuasive because a decision of the Supreme Court effectively called them into question a decade after their issuance. In 2005, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005), allowed a high-school employee to bring a Title IX retaliation claim under *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979). 544 U.S. at 176-177. Though *Jackson* did not expressly examine whether Title VII displaces Title IX, it did recognize that the two statutes are "vastly different," and noted that Title IX contains a "broadly written general prohibition on discrimination," whereas Title VII has "greater detail" as to "the conduct that constitutes discrimination." 544 U.S. at 175. Consequently, the Third Circuit observed that *Jackson* cast doubt upon *Lakoski* and *Waid*, noting: "*Lakoski* and *Waid*

14

were decided a decade before the Supreme Court handed down *Jackson*, which explicitly recognized an employee's private claim under *Cannon*. We thus question the continued viability of *Lakoski* and *Waid*." *Doe v. Mercy Catholic Med. Ctr*., 850 F.3d at 563. *See also Hauff*, 425 F. Supp. 3d at 131–32. ("[T]he reasoning in Jackson that Title IX and Title VII are vastly different statutes, further supports the availability of Title IX for employment discrimination claims by employees of educational institutions.").

Moreover, the Third Circuit directly addressed and thoroughly rebutted *Lakoski* in *Doe v. Mercy Catholic Medical Center*. *See* 850 F.3d 545, 559–63 (3d Cir. 2017). The Third Circuit in *Mercy* engaged in an extensive analysis of Supreme Court and Title IX precedent to rule that the concurrent applicability of Title VII did not preclude the plaintiff's Title IX claims. 850 F.3d at 560.

First, the court in *Mercy* analyzed two Supreme Court decisions, *Johnson v. Railway Express Agency, Inc*., 421 U.S. 454 (1975) and *Brown v. General Services Administration*, 425 U.S. 820 (1976), where the Court held that the remedies available under Title VII did not preempt other remedies. In *Johnson*, 421 U.S. at 459, 461, referring to claims brought under 42 U.S.C. § 1981 ("Section 1981"), the Court reasoned that Title VII "manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable federal statutes." Similarly in *Brown*, 425 U.S. at 833, the Court observed that "[i]n *Johnson*,

the Court held that in the context of private employment Title VII did not pre-empt other remedies."

Next, the court in *Mercy* analyzed several Supreme Court decisions which were issued after the enactment of Title IX, including *Cannon v. University of Chicago*, 441 U.S. 677 (1979), where the Supreme Court inferred a private cause of action for individuals (not merely students), "notwithstanding that Title IX doesn't expressly authorize private action." 850 F.3d at 561 (citing *Cannon*, 441 U.S. at 683). Notably, the Supreme Court made clear that a private cause of action is available under Title IX in *North Haven Board of Education v. Bell*, 456 U.S. 512 (1982), by stating that, "even if alternative remedies are available and their existence is relevant … this Court repeatedly has recognized that Congress has provided a variety of remedies, at times overlapping, to eradicate employment discrimination." *Id.* at 535, n.26.[3] Then, in *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), the Supreme Court reinforced its broad interpretation of Title IX to permit a Title IX private cause of action for retaliation based on a complaint about sex discrimination

---

[3] *North Haven* is also notable because the Supreme Court rejected a challenge that was made to agency promulgated regulations interpreting Title IX to extend to sex-based employment discrimination, and held that Title IX's prohibition of sex discrimination applies not only to students, but also to "[e]mployees who directly participate in federal programs or who directly benefit from federal grants, loans, or contract." 456 U.S. at 520. In reaching that conclusion, the Court reviewed Title IX's legislative history and found that employees of federally funded education programs and employment discrimination in academia are important focal point of Title IX. *Id*. at 523-30.

16

to proceed. *Id*. at 171, 173-74 (finding that "[the] Eleventh Circuit's conclusion that Title IX does not prohibit retaliation because it is silent on the subject ignores the import of this Court's repeated holdings construing 'discrimination' under Title IX broadly to include conduct, such as sexual harassment, which the statute does not expressly mention.") (emphasis added); *see also North Haven*, 456 U.S. at 521 ("There is no doubt that if we are to give Title IX the scope that its origins dictate, we must accord it a sweep as broad as its language"; and defining "individuals" to include both students and employees) (internal citation removed).

Finally, the court in *Mercy* analyzed *Jackson*, which involved a high school employee who was relieved of his coaching position after he complained that a girls' basketball team received unequal treatment on the basis of sex who sued alleging a Title IX retaliation claim. The Court allowed the claim to proceed, reasoning that if federal funding recipients were "permitted to retaliate freely," individuals who witness sex discrimination would be hesitant to report it and "all manner of Title IX violations might go unremedied." *Jackson*, 544 U.S. at 180. Although not explicitly addressed, the Court did not indicate that Title VII displaced relief under Title IX. Rather, it recognized that the two statutes are "vastly different": Title IX contains a "broadly written general prohibition on discrimination," whereas Title VII has "greater detail" as to "the conduct that constitutes discrimination." *Id.* at 175.

The Third Circuit in *Mercy* ultimately held that (i) Title IX extends to employment discrimination claims in employment settings; (Ii) the private Title IX remedy was not limited to students; (iii) Congress did not foreclose an individual from pursuing their rights under both Title VII and other applicable federal statutes; and (iv) Title IX and Title VII are "vastly different" statues. Nothing in the cases analyzed, or any other Supreme Court precedent addressing Title IX, suggests that the availability of a Title VII remedy to redress employment discrimination affects the availability of remedies under Title IX. 850 F.3d at 562-63.

In addition, subsequent district court decisions that considered whether employment-discrimination plaintiffs may sue under Title IX have almost uniformly found *Mercy's* reasoning compelling. See, e.g., *Hunt v. Washoe Cnty. Sch. Dist.*, No. 3:18-cv-00501-LRH-WGC, 2019 WL 4262510, at *7 (D. Nev. Sept. 9, 2019) ("The court adopts the Third Circuit's persuasive holding in *Mercy*."); *accord Fox v. Pittsburg State University*, 257 F. Supp. 3d 1112, 1121–23 (D. Kan. 2017); *Hauff v. State Univ. of New York*, 425 F. Supp. 3d 116, 131 (E.D.N.Y. 2019); *Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 607 (D. Conn. 2021); *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 106 (2d Cir. 2022); *Nurradin v. Tuskegee Univ.*, No. 3:21-CV-00155-SRW, 2022 WL 808693, at *15 (M.D. Ala. Mar. 16, 2022); *Orr v. S. Dakota Bd. of Regents*, No. 1:19-CV-01023-CBK, 2023 WL 3484207, at *8 (D.S.D. May 16, 2023), appeal

dismissed sub nom. Orr v. Schnoor, No. 23-2321, 2023 WL 8252409 (8th Cir. July 25, 2023).

Further, Defendant's attempt to distinguish *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454 (1975) is unavailing. In *Johnson*, the Supreme Court stated that Title VII's legislative history "manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." 421 U.S. at 560 (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48 (1974)). As Title IX is a distinct source of substantive rights, Title VII intends to permit an individual to pursue independently his rights under that statute and other applicable federal statutes, namely Title IX. *Johnson* makes clear that neither Title VII nor Title IX preempts the other. Defendant's reference to *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 834 (1976), is similarly unavailing, as that case turned on the fact that Title VII waived the government's sovereign immunity with respect to workplace-discrimination claims. There is no sovereign immunity issue here.

Consequently, case law makes clear that Title VII does not preempt Title IX employment discrimination claims. The cases which Defendant relies on are not only from outside of this circuit and therefore are not binding, but also are of doubtful viability under binding Supreme Court precedent or clearly distinguishable from the present matter.

19

Accordingly, this Court should follow the Third Circuit's extensive analysis in *Mercy* in holding that the availability of Title VII does not bar a private cause of action for unlawful gender-based employment discrimination or retaliation under Title IX.

## <u>CONCLUSION</u>

In light of the foregoing, this Court should affirm the District Court's March 15, 2023 Order and hold that Plaintiff-Appellee Thomas Crowther's Title IX claims against the Board are not preempted by Title VII.

**Dated: New York, New York**
       **December 13, 2023**

            **Respectfully submitted,**
            **Nesenoff & Miltenberg, LLP**

            By: <u>/s/ Andrew T. Miltenberg, Esq.</u>
                Andrew Miltenberg, Esq.
                Kristen Mohr, Esq.
                363 Seventh Avenue, 5th Floor
                New York, New York 10001
                Tel: 212-736-4500
                Fax: 212-736-2260
                amiltenberg@nmllplaw.com
                kmohr@nmllplaw.com

20

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENT**

This document complies with the word limit of Fed R. App. P. 27 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,778 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

This 13th day of December, 2023.

/s/ Kristen Mohr
Counsel for Plaintiff-Appellee

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I electronically filed the within and foregoing Response Brief of Plaintiff-Appellee Thomas Crowther with the Clerk of the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will cause it to be served upon Defendant-Appellant through its counsel of record.

This 13th day of December, 2023.

<u>/s/ Kristen Mohr</u>